1 | CARL E. DOUGLAS, Esq., SBN 097011
JAMON R. HICKS, Esq., SBN 232747
2 | **LAW OFFICES OF CARL E. DOUGLAS**
315 South Beverly Drive, Suite 305
3 | Beverly Hills, California 90212-4309
Telephone: (310) 277-9595
4 | Facsimile: (310) 277-0177

5 | DREW R. ANTABLIN, Esq., SBN 075710
ANDREA D. BRUCE, Esq., SBN 256561
6 | **ANTABLIN & BRUCE, ALP**
8484 Wilshire Bl., Suite 215
7 | Beverly Hills, California 90211

8 | Attorneys for Plaintiffs WANDA MITCHELL, Individually,
and as Administratrix of the Estate of
9 | RAYMOND LEE MITCHELL

10

11 | **UNITED STATES DISTRICT COURT**

12 | **CENTRAL DISTRICT OF CALIFORNIA**

13

14 | WANDA MITCHELL, Individually, and )   CASE NO. ED CV 07-00419-VAP
as Administratrix of the Estate of   :   (OPx)
15 | RAYMOND LEE MITCHELL,   )
  :   [Case assigned to Judge VIRGINIA A.
16 |        Plaintiffs,   )   PHILLIPS]
  :
17 |       v.   )   **PLAINTIFF'S PRE-TRIAL**
  :   **MEMORANDUM OF**
18 | COUNTY OF RIVERSIDE, and 20   )   **CONTENTIONS OF FACT AND**
unknown other named defendants,   )   **LAW**
19 |   )
       Defendants.   :   Pre-Trial Conference Date: 10-20-08
20 | _____ )   Time: 2:00 p.m.

21

22

23

24 |      **TO THE HONORABLE COURT, AND TO DEFENDANTS AND THEIR**

     **COUNSEL OF RECORD:**
25

26 |      Plaintiff WANDA MITCHELL respectfully submits the following

     Memorandum of Contentions of Fact and Law, pursuant to Local Rule 16.4:
27

28

1. **STATEMENT OF CLAIMS MADE BY PLAINTIFF:**

     **A) OVERVIEW OF PLAINTIFF'S ACTION:**

Plaintiff is WANDA MITCHELL, age 49, individually and as executrix of the Estate of RAYMOND MITCHELL, deceased.    WANDA was RAYMOND's mother.

The defendants are COUNTY OF RIVERSIDE, JERRY ABBOTT and MANUEL CAMPOS.    [Plaintiff has previously dismissed all claims against defendants NARDONE, FALER and CAIL.]

This is an action for civil rights violations under 42 *U.S.C.* 1983 and for the wrongful death of RAYMOND MITCHELL.  RAYMOND died in WANDA's home [where he and WANDA resided], on July 19, 2006.  He was 21 years old at the time and suffered from autism.    WANDA called 911 to request assistance at her home because RAYMOND was acting out.  The defendant deputies responded.  By the time the deputies arrived at the home, RAYMOND's behavior  was under control. The deputies significantly overreacted, and directed unreasonable and unnecessary force against RAYMOND, killing him in the process.  The acts and conduct of the deputies were negligent and in violation of 42 *U.S.C.* 1983.  RAYMOND died as a result of the physical confrontation and struggle unreasonably initiated by the deputies.

     **B) CLAIMS MADE BY PLAINTIFF:**

The operative pleading is plaintiff's Second Amended Complaint ("SAC").

The claims set forth in the SAC are:

     1. Civil Rights Violation (42 *U.S.C.* 1983);

     2. Discrimination/Civil Rights Violations (*Cal. Civil Code* 51.7);

     3. Civil Rights Violations (*Cal. Civil Code* 52.1);

     4. Assault and Battery;

     5. Wrongful Death;

- 2 -

6. Negligent Hiring, Supervision, Retention, Training;

7. Negligence;

8. Negligent Infliction of Emotional Distress.

Plaintiff has previously dismissed the Second Cause of Action (*Cal Civil Code* 51.7).

The claims and causes of action in the SAC which plaintiff intends to pursue at time of trial are:

1. Civil Rights Violation (42 *U.S.C.* 1983) - First Cause of Action;

2. Assault and Battery - Fourth Cause of Action;

3. Wrongful Death - Fifth Cause of Action;

4. Negligent Training - Sixth Cause of Action;

5. Negligence - Seventh Cause of Action.

### C)   **ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS:**

1. Elements Required to Establish 42 *U.S.C.* 1983 Claim Against the Individual Defendants:

(a)   That the defendants acted under color of law;

(b)   That the conduct or actions of the defendants deprived RAYMOND and WANDA MITCHELL of their rights under the U.S. Constitution;

(c)   That the conduct or actions of the defendants was a moving force in causing a deprivation of RAYMOND and WANDA MITCHELL's rights;

(d)   That the defendants used excessive force in seizing RAYMOND MITCHELL;

(e)   That RAYMOND died as a result of the defendants' conduct. [Ninth Circuit Model Instruction, No. 9.22].

2. Elements Required to Establish 42 *U.S.C.* 1983 Claim Against the Defendant County of Riverside:

(a)   That the defendant officers acted under color of law;

- 3 -

1         (b)  That the conduct or actions of the defendants deprived

2 RAYMOND and WANDA MITCHELL of their rights under the U.S. Constitution;

3         (c)  That the officers acted pursuant to a practice or custom of the

4 COUNTY;

5         (d)  That there was a failure to train the officers regarding the manner

6 in which they should deal with persons afflicted with autism;

7         (e)  That the conduct or actions of the defendants was a moving force

8 in causing a deprivation of RAYMOND and WANDA  MITCHELL's rights;

9 [Ninth Circuit Model Instruction, No. 9.4; *Gibson v. Washoe*, 290 F.3d 1175 (9th Cir.

10 2002)].

11       3. Elements Required to Establish Assault & Battery Claim:

12         (a)  That the defendants touched RAYMOND MITCHELL with the

13 intent to harm or offend him;

14         (b)  That RAYMOND did not consent to the touching;

15         (c)  That RAYMOND was harmed or offended by defendants'

16 conduct;

17         (d)  That a reasonable person in RAYMOND's position would have

18 been harmed or offended.

19 [Judicial Council of California Civil Jury Instructions (2008), No. 1300, 1301].

20       4. Elements Required to Establish Wrongful Death Claim:

21         (a)  That the defendants touched RAYMOND MITCHELL with the

22 intent to harm or offend him;

23         (b)  That RAYMOND did not consent to the touching;

24         (c)  That defendants' conduct was a substantial factor in causing

25 RAYMOND's death;

26         (d)  That a reasonable person in RAYMOND's position would have

27 been harmed or offended;

28

1              – or, alternatively –

2              (a)   That the defendants were negligent with respect to their

3    interaction/confrontation with RAYMOND;

4              (b)   That RAYMOND died as a result;

5              (c)   That the defendants' negligence was a substantial factor in

6    causing RAYMOND's death.

7    [Judicial Council of California Civil Jury Instructions (2008), No. 400, 3921].

8              5. Elements Required to Establish Negligent Training Claim:

9              (a)   That the individual defendants were negligently trained by

10   defendant COUNTY;

11             (b)   That RAYMOND died as a result of that negligent training;

12             (c)   That the defendant's negligent training of the individual

13   defendants was a substantial factor in causing RAYMOND's death.

14   [Judicial Council of California Civil Jury Instructions (2008), No. 400].

15             6. Elements Required to Establish Negligence Claim:

16             (a)   That the defendants were negligent with respect to their

17   interaction/confrontation with RAYMOND;

18             (b)   That RAYMOND died as a result;

19             (c)   That the defendants' negligence was a substantial factor in

20   causing RAYMOND's death.

21   [Judicial Council of California Civil Jury Instructions (2008), No. 400].

22        **D)   KEY EVIDENCE IN SUPPORT OF PLAINTIFF'S CLAIMS:**

23             1. 42 *U.S.C.* 1983 Claim Against the Individual Defendants:

24        RAYMOND was born on January 29, 1985, and always resided with his

25   mother WANDA.   At the time of his death on July 19, 2006, they lived in Perris.

26   RAYMOND suffered from autism, having been so diagnosed at age 2 ½.

27

28
                              - 5 -

1    On July 19, 2006, at approximately 2:00 p.m., RAYMOND was experiencing a
2  not uncommon 'tantrum' resulting from his autistic condition, and WANDA called
3  the 'non-emergency' phone number of the Sheriff's Department and requested
4  assistance with a '5150' situation [a course of action she had previously been advised
5  to take by Sheriff's personnel].

6    By the time deputies CAMPOS and ABBOTT arrived at the home,
7  RAYMOND had calmed down.    He was no longer in the midst of a tantrum.    Both
8  were aware that RAYMOND was autistic, that this was a '5150' call for assistance,
9  and that RAYMOND had not committed any crime.    RAYMOND and WANDA
10 were in an upstairs bedroom.    RAYMOND was preparing to take a shower and was
11 in his underwear.    When he saw the deputies, he 'hid' in a closet.    He eventually
12 came out of the closet at WANDA's behest, and was calmly sitting on a bed.    As
13 WANDA went to hand him a shirt, Deputy CAMPOS grabbed RAYMOND's arm
14 and tried to turn him over.    Both ended up on the bed.    ABBOTT then jumped on
15 RAYMOND as well.    RAYMOND then began to struggle with the deputies.
16 ABBOTT ordered WANDA out of the room and she complied.    She was standing
17 just outside the bedroom as the struggle escalated.

18    During the ensuing several minutes, RAYMOND was punched by the deputies
19 multiple times.    ABBOTT and CAMPOS turned him face down on the bed and one
20 or both were, at various times, exerting force and/or laying on his back.

21    Three other deputies arrived within several minutes.    As they entered the
22 room, WANDA saw that RAYMOND was pinned on the bed, face down, with
23 CAMPOS and ABBOTT still on top of him.    She saw the other three officers
24 essentially dive onto the 'pile' of bodies already on the bed.    As one of those three
25 deputies, CAIL, entered the bedroom, he saw CAMPOS and ABBOTT laying on top
26 of RAYMOND, and because of that he could not even tell if RAYMOND was
27 wearing a shirt or not.    He saw that RAYMOND was face down.    He could see

28

- 6 -

1  only parts of RAYMOND's legs.    RAYMOND's hands were restricted at that time.
2  Although RAYMOND was moving, he was not engaging in significant movement
3  such as bucking up and down, and RAYMOND was easily cuffed at that time.

4       Some time thereafter, deputies discovered that RAYMOND was not breathing.
5  He never regained consciousness.    Paramedics were called, but to no avail.

6       RAYMOND died as a result of a confrontation/physical struggle initiated by
7  the deputies for no reason.    Absent those unnecessary actions and their excessive
8  force, RAYMOND would not have died.    Plaintiff's Pathology expert will testify
9  that RAYMOND died as a direct result of the physical struggle with the deputies,
10  and  that the cause of death was positional asphyxia.

11          2. 42 *U.S.C.* 1983 Claim Against Defendant COUNTY:

12       The defendant officers were acting pursuant to an unconstitutional practice of
13  defendant COUNTY.    In dealing with mentally ill citizens who had not committed
14  any crime, the COUNTY, through its deputies, dealt with those persons in the same
15  way that they would deal with a common criminal.    The COUNTY did not train its
16  deputies to deal with a non-criminal subject suffering from autism in a way that was
17  any different than dealing with a criminal.    In addition, a practice existed of rather
18  than obtaining mental health assistance in dealing with autistic subjects, deputies
19  instead used force against them, or restrained them as if they were criminals.

20       Deputy Campos conceded that he received  no training on how to deal or
21  interact with a subject suffering from autism, including no on-the-job training in that
22  regard.    He did not receive any documentation dealing with autism.    He attended
23  no briefings where there was discussion on the subject of how to deal with someone
24  who might be suffering an autistic episode.

25       Deputy Abbott conceded that he received no training on what it meant to be
26  autistic, or the characteristics, symptoms or behaviors of someone who is autistic.

27

28

- 7 -

1  He had no training on the benefits of using a care-giver to help calm down an autistic
2  person in the midst of an episode.

3              3. <u>Assault & Battery Claim:</u>

4       See paragraph D 1 above.

5              4. <u>Wrongful Death Claim:</u>

6       See paragraph D 1 above.

7              5. <u>Negligent Training Claim:</u>

8       Deputy Campos received no training on how to deal or interact with a subject
9  suffering from autism, including no on-the-job training in that regard.   He did not
10 receive any documentation dealing with autism.   He attended no briefings where
11 there was discussion on the subject of how to deal with someone who might be
12 suffering an autistic episode.   Although he does acknowledge that he knew that he
13 should treat people differently according to their mental stability or their actions, he
14 simply had no idea how to go about trying to defuse the situation with RAYMOND
15 or how to otherwise interact differently with someone afflicted with autism.   He
16 initiated the physical confrontation with RAYMOND.

17      Deputy Abbott received no training on what it meant to be autistic, or the
18 characteristics, symptoms or behaviors of someone who is autistic.   He had no
19 training on the benefits of using a care-giver to help calm down an autistic person in
20 the midst of an episode. He ordered WANDA, RAYMOND's safety not to leave the
21 room.

22             6. <u>Negligence Claim:</u>

23      See paragraphs D 1 and D 5 above.

24 **2.    CONTENTIONS/ISSUES OF LAW:**

25      Key legal issues and/or contentions in this matter are:

26 **A) Excessive Force Against Decedent:**

27      Plaintiff contends that the combined use of unnecessary force by the Defendant

28

                              - 8 -

1 | officers, including striking, hitting, handcuffing, and placing their body weight on
2 | RAYMOND while he was in a prone position, caused his death.  In general, all
3 | claims of excessive force, whether deadly or not, should be analyzed under the
4 | objective reasonableness standard of the 4th Amendment set forth in *Graham v.*
5 | *Connor*, 490 U.S. 386, 397 (1989).    In *Graham*, the Supreme Court held that police
6 | officers may only use force that is objectively reasonable, listing as the most relevant
7 | factors to be considered in making that determination:  "[1]  the severity of the
8 | crime at issue, [2] whether the suspect poses an immediate threat to the safety of the
9 | officers or others, and [3] whether he is actively resisting arrest or attempting to
10 | evade arrest by flight."  *Id*, at 396.   Here, RAYMOND had committed no crime.
11 | There were two uniformed police officers, in addition to family members, who could
12 | monitor RAYMOND while other officers and/or mental health assistance arrived.
13 | He was confined to an upstairs bedroom.  He had nowhere to go.   RAYMOND was
14 | then calm.  Instead of trying, and continuing, to de-escalate the situation, and instead
15 | of utilizing WANDA's familiarity with her son and her experience in dealing with his
16 | 'tantrums', the officers instead ordered WANDA out of the room, jumped on
17 | RAYMOND, assaulted and battered him, stuck him, attempted to choke him, placed
18 | their full body weight on his back while he was face down, and handcuffed him.
19 | Rather than assist with his mental health issue, they instead approached the situation
20 | as if RAYMOND was a criminal.   They then inflicted entirely unnecessary force
21 | which was unreasonable under the circumstances and which was a cause of
22 | RAYMOND's death.

**B) Integral Participation:**

24 | Every officer who is an "integral participant" in an action that violates the 4th
25 | Amendment is liable for that violation.  *Boyd v. Benton County*, 374 F.3d 773, 780
26 | (9th Cir. 2004).   Integral participation does not require that each officer's actions
27 | themselves rise to the level of a constitutional violation, rather all officers

- 9 -

1  participation in the planning and execution of a search in which they unreasonably
2  used excessive force were held liable in *Boyd*, not just the officer who personally
3  engaged in the excessive force.   In this action, each of the defendant officers used
4  force against RAYMOND, and it is the reasonableness of the combined use of force
5  which should be evaluated under the factors set forth in *Graham*.

6  **C)   Plaintiff has Standing to assert the Fourth Amendment Claims:**

7          Whether a plaintiff can assert a survival claim pursuant to 42 *U.S. C.* 1983 is
8  dependent upon whether state law authorizes a survival action.   In looking at
9  California state law, California *Code of Civil Procedure* section 377.60 governs who
10  has standing to sue in a wrongful death claim.   Section 377.60 provides in pertinent
11  part that a cause of action for wrongful death may be asserted by the decedent's
12  surviving heir "who would be entitled to the property of the decedent by intestate
13  succession."   Here, RAYMOND died without a spouse, children, or a will.
14  WANDA is therefore his successor in interest and has standing to assert survival
15  causes of action under *CCP* sections 377.30 and 377.60.

16          *CCP* section 377.30 provides in part that a cause of action "that survives the
17  death of the person entitled to commence an action or proceeding passes to the
18  decedent's successor in interest."   *CCP* section 377.11 defines a decedent's
19  successor in interest as "the beneficiary of the decedent's estate."

20          The court in *Maryland v. Las Vegas Metro Police Dep't*, 139 F.3d 365, 369
21  (9th Cir. 1998) specifically recognized that California law extended the right to bring
22  survival actions to family members independent or in lieu of the estate's claims.   The
23  court stated that in section 1983 actions, the survivors of an individual killed as a
24  result of an officer's excessive force may assert a civil rights claim on that
25  individual's behalf if the relevant state law authorizes a survival action (citing section
26  1983(a)).   As such, since Nevada's laws did not have a statute authorizing survival
27  actions, the court there found that plaintiffs did not have standing to bring suit.   The

28

- 10 -

1 | court contrasted Nevada's laws with California law which allows for survival actions.
2 | Integral participation does not require that each officer's actions themselves rise to
3 | the level of a constitutional violation, rather all officers participating in the planning
4 | and execution of a search in which they unreasonably used excessive force were held
5 | liable in *Boyd*, not just the officer who personally engaged in the excessive force.  In
6 | this action, each of the defendant officers used force against RAYMOND, and it is
7 | the reasonableness of the combined use of force which should be evaluated under the
8 | factors set forth in *Graham.*

9 |      The court in *Little v. City of Manhattan Beach*, 21 Fed.Appx. 651, 2001 WL
10 | 1254985 (9th Cir. 2001) [not published], specifically applied *CCP* section 377.60 and
11 | the court's findings in *Moreland* to a civil rights case in California.  In *Little*, the
12 | widow, mother and minor children of the decedent who was shot and killed during a
13 | police chase brought a section 1983 action against the city and officers alleging
14 | violations of their 4th and 14th Amendment rights.  The court specifically found that
15 | decedent's surviving spouse and children had standing to sue for civil rights
16 | violations and authorized such actions allowing for decedent's successors in interest
17 | to sue for civil rights violations.

18 |      Where police misconduct causes the death of an individual, a cause of action
19 | arises under section 1983.  Section 1983 does not say who has standing to file an
20 | action for the death of another.  The governing rules are those provided by state law,
21 | pursuant to section 1988.  *Moreland v. Las Vegas Metro Police Dep't*, *supra*;
22 | *Guyton v. Philliphs*, 532 F.Supp. 1154 (N.D. Cal. 198].  In *Robertson v. Wegmann*,
23 | 436 U.S. 584 (1978), the Supreme Court held that state law governs whether a civil
24 | rights claim unconnected with plaintiff's death will survive the event.  In this action,
25 | WANDA as the surviving heir and successor in interest to RAYMOND has standing
26 | to pursue a wrongful death and survival action under California law, and thus also
27 | has standing to pursue the 1983 claim.

28 |

- 11 -

**D)  14th Amendment Violation - Loss of Familial Relationship:**

Plaintiff alleges that the defendants violated her rights guaranteed by the substantive due process clause of the 14th Amendment.   WANDA was deprived of the familial relationship, love, affection, comfort and society of RAYMOND.  In *Smith v. Fontana*, 818 F.2d 1411, 1417-1418 (9th Cir. 1987), the court held that decedent's estate, through its administrator, had standing to maintain a 1983 action against the police where decedent was shot and killed in violation of his 4th Amendment rights.   The court further held that the representative of the decedent's estate and the decedent's children could also maintain their own substantive due process claim based upon the loss of their father.

In *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), the court recognized that a parent has a constitutionally protected liberty interest under the 14th Amendment in the companionship and society of his or her child, holding that a "deliberate indifference" standard should apply to such claims.

In *Byrd v. Guess*, 137 F.3d 1126, 1134 (9th Cir. 1998), the court held that the plaintiffs, as heirs, had standing under the 14th Amendment to assert a claim for the violation of their own personal due process rights, for the denial of their liberty interest in the society and companionship of the decedent.   The court likewise adopted the "deliberate indifference" standard as being applicable to the substantive due process claim.

**E)  Monell Liability:**

When a municipal practice or custom of some nature is the cause of unconstitutional actions taken by a municipal employee, the municipality itself will be liable for the resulting harm.  *Monell v. Department of Social Services*, 436 U.S. 658 (1978).   Such liability may be based upon a single incident, and the requirement of a custom or practice does not necessitate proof of a long-standing practice.   *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).   Jurors may be

- 12 -

1 permitted to infer a policy of inadequate training from a single incident of police
2 misconduct, where the proof includes evidence that an unconstitutional policy existed
3 at the time.   *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

4 **F)  Damages:**

5 Plaintiff claims compensatory and survival damages on behalf of decedent for
6 his pain and suffering before death, a separate sum to compensate decedent for his
7 loss of enjoyment of life, that is for the deprivation of his right to life without due
8 process of law.   See, *Guyton v. Phillips*, 532 F. Supp. 1154, 1166, 1169 (N.D. Cal.
9 1981), *rev'd* in part on other grounds, 606 F.2d 248 (9th Cir. 1979); accord, *Bell v.*
10 *City of Milwaukee*, 746 F.2d 1205, 1235-1240 (7th Cir. 1984);   Sherrod v. Berry, 827
11 F.2d 195, 205 (7th Cir. 1987) *affirming* 629 F.Supp. 159 (N.D. Ill. 1985).   Plaintiff
12 also claims compensatory damages for loss of RAYMOND's love, companionship,
13 affection, comfort, and society.   Plaintiff further claims survival damages and
14 wrongful death damages under both the 4th and 14th Amendments.   Lastly, plaintiff
15 seeks attorney fees under 42 *U.S.C.* 1988, and punitive damages against the
16 individual defendants.

17 **3.     ANTICIPATED EVIDENTIARY ISSUES:**

18 Plaintiff has stipulated to/will not oppose seven of defendant's nine
19 contemplated motions in limine.   Plaintiff is opposing two motions, and defendant is
20 opposing the one motion in limine being filed by plaintiff, as follows:

21 A)  Defendants' Motions:

22 1.  To exclude testimony of plaintiff's expert pathologist, Dr. Posey, on
23 the subject of positional asphyxia as a cause of death.   Plaintiff contends that Dr.
24 Posey possesses sufficient knowledge and expertise on that subject to offer an
25 opinion as to the cause of death;

26 2.  To exclude testimony of Dr. Posey on any subject except in the
27 "rebuttal" part of plaintiff's case.   Plaintiff intends to call Dr. Posey in plaintiff's

28

- 13 -

1   case-in-chief.   Simply because Dr. Posey was designated under *FRCP* 26 (a)(2)(D)
2   as an expert to rebut or contradict a previously named expert of the defense should
3   not preclude plaintiff from calling Dr. Posey in plaintiff's case-in-chief.

4        B)   Plaintiff's Motion:

5        1.   To exclude testimony/evidence concerning "prior" occasions when
6   RAYMOND experienced "temper tantrums/outbursts" and/or those occasions when
7   Mrs. MITCHELL called law enforcement to the family home to assist her in dealing
8   with such outbursts [except as to the one occasion shortly before this incident, to wit,
9   in May 2006].

10  **4.     BIFURCATION OF ISSUES:**

11       Plaintiff would propose bifurcating the trial into two phases:   (1) Liability with
12  respect to the actions/inaction of the defendants:   was there a 1983 violation?   were
13  the defendants negligent?   was there an assault and battery, or other wrongful
14  conduct? ;   if "yes", (2) Medical, causation and damages issues.

15       Counsel for plaintiff and defendants have discussed bifurcation.   Defendants
16  are not in agreement with the above proposal, although defendants are generally in
17  agreement regarding bifurcating "liability" and "damages".

18  **5.     JURY TRIAL:**

19       Plaintiff has timely demanded a jury trial on all claims presented in the SAC, as
20  outlined above.

21  **6.     ATTORNEY FEES:**

22       With respect to the First Cause of Action [1983 claim], plaintiff contends that
23  on proof of a civil rights violation, attorney fees are recoverable under the provisions
24  of 42 *U.S.C.* 1988.

25  **7.     ABANDONMENT OF ISSUES:**

26       As noted at paragraph "1" above, plaintiff is not pursuing the Third and Eighth
27  Causes of Action in the SAC.

28

- 14 -

1  **8.     WITNESS LIST:**

2         Plaintiff is separately filing and serving her Witness List.

3

4  Dated: September 29, 2008       Respectfully submitted,

5                                  LAW OFFICES OF CARL E. DOUGLAS
                                   ANTABLIN & BRUCE, ALP
6

7

8                                          /S/
9                          By_____
                                   Carl E. Douglas
10                                 Attorneys for Plaintiffs WANDA MITCHELL,
                                   Individually, and as Administratrix of the
11                                 Estate of RAYMOND LEE MITCHELL

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 15 -

PLAINTIFF'S PRE-TRIAL MEMORANDUM OF
CONTENTIONS OF FACT AND LAW